Brinkerhoff, C.J.
On the 6th of December, 1855, the defendant in error as administrator de bonis non of Ward, brought suit, in the common pleas of Hamilton county, against the plaintiffs in error, on the administration bond of one Harrington, who was the preceding administrator of Ward, and on which bond the plaintiffs in error were the sureties. The bond bears date the tenth of August, 1849, and is in the usual form. The breach assigned in the petition is that Harrington had .failed to account for, and to pay over a considerable amount of assets, in thé petition specified, which came to his 2io.nds as administrator.
The sureties answered, in substance, setting forth the time of the execution of the bond (August, 1849), that Harrington, while still in the execution of his office as administrator; died in February, 1852, and prior to the 7th of April,. 1854, and that no action was ever taken, and no order, judgment or decree of any court ever rendered or made against him, in his lifetime, in respect to the matter of his administration of said estate.
To this answer there was a demurrer, which was overruled, and judgment thereon in favor of the sureties, defendants below.
This judgment was, by the district cou.rt, at its April term, 1861, reversed; and this petition in error is now prosecuted here to reverse such judgment of reversal.
The only question in the case is made on the demurrer to the answer; which is, whether, under the law as it stood at the time of the comnjencement of this suit, to-wit: the 6th of December, 1855, and as it still stands, an administrator de bonis non can maintain an action on the bond of a preceding administrator who died in office prior to the 7th of April, 1854?
*209 Prior to the last mentioned date no such action could be maintained by the administrator de bonis non, either at common law, or under any statute then existing; and the only remedy on the bonds of an administrator dying in office was by action by creditors, legatees and distributees. Blizzard v. Filler, 20 Ohio Rep. 479, and Tracy v. Card, 2 Ohio St. Rep. 431.
But by the statute of April 7,1854, “ concerning suits on-the bonds of executors and administrators,” it is provided, “ that in all cases where the powers of an executor or administrator, heretofore or hereafter appointed, under any law of this state, have ceased by death, removal, resignation, or in any other manner, any succeeding administrator, or co-executor or co-administrator, may maintain an action on the bond of such executor or administrator whose powers have ceased, against any of the obligors thereof, or their legal representatives, for any breach of the conditions of said bond.” 4 Curwen’s Stat. 2571.
This statute, if a valid enactment, warrants the action brought in this case in terms too plain to be mistaken. It is argued, however, in behalf of the plaintiffs in error, that the statute is invalid by reason of repugnancy to the constitution of the state. And this in two particulars. First, because the legislature in its enactment has failed to conform to the provisions of section sixteen, article two, of the constitution, in respect to the amendment of statutes. To this it is a sufficient answer to say, that this statute is not an amendment of a particular statute; but is, in itself, a distinct and independent statute. It is an amendment in no other sense than that of being an amendment of the law- generally.
Second. — It is argued that, as the statute assumes to confer a right of action upon the administrator de bonis non which did not before its passage exist in his favor, it is in conflict with article two, section twenty-eight, of the constitution; which declares that “the general assembly shall have no-power to pass retroactive laws.”
This leads us to inquire what are “ retroactive laws *210 Since the introduction of this prohibition into the fundamental law of our state, this court has not had occasion to define it; and so far as we are aware, no similar provision is to be found in the constitution of any of the states of the Union, except in that .of New Hampshire, which declares that “ retro» speetive laws are highly injurious, oppressive, and unjust. No such laws should, therefore, be made, either for the decision of civil cases, or the punishment of offenses.” The words “retrospective” and “retroactive,” as applied to laws, seem to be synonymous; and, as such, they are used interchangeably by Mr. Sedgwick in his treatise on constitutional law. In The Society v. Wheeler, 2 Grallison’s R. 139, a case arising under the constitution and laws of Néw Hampshire, Mr. Justice Story thus defines a retrospective law. “ Upon principle, every statute which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective.” Accordingly, it was held in that case, that an act of the legislature of New Hampshire, allowing to ten-ants the value of improvements, etc., on recoveries against •them, so far as it applied to past improvements, was unconstitutional.
Judge Story’s definition of “retrospective laws,” was quoted with approval by the superior court of judicature of New Hampshire, in Dow v. Norris, 4 N. H. R. 16, and, in subsequent cases, seems to have been steadily adhered to, and to have been accepted as furnishing the proper rule of decision. Clark v. Clark, 10 N. H. R. 380; Greenlaw v. Greenlaw, 12 N. H. R. 200; Kenneths Petition, 4 Foster’s R. 139. In all of these cases, certain statutes of New Hampshire are held to fee in conflict with the constitutional provision above given; and in all of them the court is careful to show that the statute in question comes within some of the terms of the definition; thus, by implication at least, admitting that if a statute do not come within the terms of the definition, it is free from constitutional objection, on the ground of the prohibition referred to.
*211 Assuming, then, that these prohibitory clauses of the Ohio and New Hampshire constitutions are substantially identical in signification, and applying the definition of them by Judge Story as the test, it seems to us that the statute now in question before us is free from constitutional objection. It neither “ takes away nor impairs vested rights acquired under preexisting lawsthe rights of creditors, legatees, and distributees of the estate, and those of the sureties in the bond remain the same as before. It creates no “ new obligation, imposes” no “ new duty,” and “ attaches ” no “ new disability.’’ The amount of the liability, and the extent of the duty of the obligors in the bond is the same as before ; the only difference being, that, before the statute, they were liable to a multiplicity of suits by a multiplicity of creditors, legatees, and distributees, and now they are liable to a single suit upon the same obligation and for the same amount, brought by a trustee for the benefit of all creditors, legatees, and distributees of the estate. The statute is purely remedial in its effect, operates on pre-existing legal rights, obligations, duties, and interests, and by avoiding the necessity for multiplicity of suits and the accumulation of costs, will tend to promote the interests of all parties. Laws of this character are not within the mischiefs against which the prohibitory clause of our constitution was intended to guard, and therefore not within a just construction of its terms.
Judgment affirmed.
Scott, White, and Welch, JJ., concurred.